Douglas F. Fesler, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 12480.   Promulgated November 2, 1928.

*Joseph McCormack, Esq.*, and *F. A. Thulin, Esq.*, for the petitioner.

*James A. O'Callaghan, Esq.*, for the respondent.

Siefkin: This is a proceeding for the redetermination of a deficiency in income tax for the calendar year 1923 in the amount of $61,401.86. The only question is whether certain securities received on an exchange in 1923 had "a readily realizable market value" within the meaning of section 202 (c) of the Revenue Act of 1921, which provides:

(c) For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; * * *

The petitioner is a resident of Chicago, Ill. On January 9, 1923, he entered into the following contract:

This Agreement of Exchange entered into this 9th day of January, 1923, by and between Douglas F. Fesler, of the City of Chicago, County of Cook and State of Illinois, party of the first part and hereinafter referred to as "Fesler", and Central Securities Company, an Illinois corporation doing business in the City of Chicago, County of Cook and State of Illinois, the party of the second part, and hereinafter referred to as "Company", Witnesseth:

That whereas "Fesler" is the owner of forty-five hundred (4,500) no par value shares of the common capital stock of Bassick Manufacturing Company, a Delaware corporation with its principal office and plant in the City of Chicago, County of Cook and State of Illinois, and is desirous of exchanging the before-mentioned shares of stock for cash and certain securities owned by the "Company"; and

Whereas the "Company" is desirous of paying cash and of exchanging certain securities belonging to it for the aforesaid shares of stock belonging to "Fesler";

Now, Therefore, "Fesler" agrees to exchange the shares of stock as aforesaid and to deliver and hereby does deliver the shares of stock to the "Company" duly endorsed and assigned, under the following terms and conditions, to wit:

> 1. That the "Company" shall pay him the sum of Fifty thousand ($50,000) Dollars in cash, the receipt of which said sum of Fifty Thousand ($50,000) Dollars is hereby acknowledged.
>
> 2. That the "Company" shall deliver to him certain securities, detailed in the attached schedule, designated as Schedule "A," which schedule is hereby made a part and parcel of the within contract of exchange, the receipt of which securities is hereby acknowledged.

IT IS FURTHER RECITED THAT

WHEREAS the "Company" has purchased certain securities set forth in the aforesaid schedule from the Central Trust Company of Illinois (Hereinafter referred to as the "Banker"), captioned as Schedule "A"; and

WHEREAS the market for the securities set forth in the aforesaid schedule is known in accordance with financial custom and terminology as a closed market or as a restricted market, meaning thereby that the persons who purchase such securities and subsequently desire to sell usually request the "Banker" to purchase the same and have no means of ascertaining other prospective purchasers; and

WHEREAS the "Company" has contracted with the "Banker" whereby certain restrictive conditions of the general nature hereinafter set forth have been assumed by the "Company" with the "Banker" in the acquisition of the securities set out in Schedule "A"; and

WHEREAS the "Banker" ordinarily places its securities in the hands of investors in comparatively small lots and is unwilling for the "Company" to deliver to "Fesler" such large blocks of said securities as he desires without being assured that they will remain off the market for a reasonable length of time until the "Banker" has succeeded in permanently placing with small investors the remainder of such issues which it still has for disposition, since such action on the part of "Fesler" might either interfere with its ability to dispose of the remainder of such issues held by it or tend to depress the market price; and

WHEREAS the "Banker" without assuming in any case any obligation so to do, is ordinarily ready and willing to repurchase its securities from time to time in small and reasonable amounts and at a price ordinarily represented by a slight reduction from its current sales price for such securities; and

WHEREAS the "Banker" would not be willing to extend such practice to include securities in the amount sold to "Fesler"; and

WHEREAS the "Company" and the "Banker" are desirous of and insistent in having "Fesler" assume the restrictive relationship beforementioned with the "Banker";

Now, THEREFORE, IN CONSIDERATION of the premises and in consideration of the special "trade in price" given "Fesler" by the "Company" in the ex-

change of the beforementioned securities, the "Banker" hereby expressly states that it will not support the limited or closed market on the within securities delivered to "Fesler" and will not repurchase the aforesaid securities from "Fesler" or any transferee of "Fesler" at the difference ordinarily obtaining between "bid" and "asked" quotations, or repurchase the said securities at a substantial discount or in a trade, or repurchase such securities in any manner, within six months from the date hereof and after such period only if it sees fit so to do;

"Fesler" in consideration of the premises and in consideration of the special trade in price given him in the exchange of the beforementioned securities, hereby covenants and agrees that he will not sell or cause to be sold the aforesaid securities, or negotiate for a sale, directly or indirectly for present or future delivery of the beforementioned securities, or pledge or cause to be pledged the aforesaid securities, delivered to him by the "Company" in exchange for his shares of stock, until the expiration of six months from the date hereof;

FURTHERMORE, to secure the due performance of the foregoing recitals, "Fesler" hereby agrees that if any of the securities set forth in Schedule "A", in any way be offered for sale to and purchased by the "Banker", he will purchase such securities from the "Banker" at any time within six months from the date hereof at the "asked" price thereof;

IN WITNESS of the within recitals, "Fesler" has hereunto set his hand and seal and the "Company" and the "Banker" in like witness have caused these presents to be duly executed by its authorized officer or agent.

### SCHEDULE "A"

$12,000 BEAVER PRODUCTS Co. 1st & Refunding Mtge. 20-Yr. 7½% S. F. Gold Bonds, due July 1, 1942, at_____ 102

14,500 CORNELL WOOD PRODUCTS Co. 1st & Refunding Mtge. 7½% S. F. Gold Bonds, due Sept. 1, 1937, at_____ 101

10,000 W. C. FOSTER COMPANY 1st Lien Coll. Trust Gold Bonds, due August 1, 1926, at_____ 100

44,500 ORPHEUM CIRCUIT INC. 5-Yr. 7½% Conv. Gold Notes due September 1, 1926, at_____ 101

50,000 EVERLASTIK INCORPORATED 1st Mtge. 15-Year 7% S. F. Gold Bonds, due November 1, 1937, at_____ 99

50,000 M. E. SMITH & Co., INC., 10-Year 6½% Collateral Tr. Gold Notes, due November 1, 1932, at_____ 96

13,000 CERA MILLS 1st Mortgage 6% 5-Year S. F. Gold Bonds due February 1, 1924, at_____ 100

24,000 JACKSONVILLE GAS COMPANY 1st Mortgage 5% S. F. Gold Bonds, due June 1, 1942, at_____ 80

57,000 SOUTHWESTERN GAS & ELECTRIC Co. 1st & Refunding Mtge. 5% Gold Bonds, due Aug. 1, 1932, at_____ 90

22,000 UNITED GAS & FUEL Co. of Hamilton, Ltd. 1st Mtg. 6% 20-yr. S. F. Gold Bonds, due January 1, 1943, at_____ 98½

25,000 LUDLUM STEEL Co. 7% Serial Gold Notes due April 1, 1925 Nos. 517/21, at _____ 100½
due April 1, 1926 Nos. M647/51, at_____ 101
due April 1, 1927 Nos. M750, 792/3, 747/9, 760/4, 774/4, at_____ 101½

$50,000 VICKSBURG LIGHT & TRACTION Co. 1st Mtge. 7% Gold Bonds, due July 1, 1932, at_____ 99

23,000 NEW JERSEY WORSTED SPINNING Co. 1st Mtge S. F. 8% Gold Bonds, due July 1, 1936, at_____ 106½

13,000 FULTON MARKET COLD STORAGE Co. 1st Mtge 7% Guaranteed Serial Gold Bonds due Sep. 1, 1930 Nos. M802/14, at_____ 101

50,000 WEST VIRGINIA WATER & ELECTRIC Co. 1st Mtge 20-yr 6½% Gold Bonds, due May 1, 1942, at_____ 100

50,000 NORTH MISSOURI POWER Co. 1st & Ref. 6½% Gold Bonds due December 15, 1942, at_____ 96

44,500 VIRGINIA-WESTERN POWER COMPANY 1st & Ref. Mtge. 6% Gold Bonds, due April 1, 1942, at_____ 94½

50,000 JACOB DOLD PACKING COMPANY 1st Mtge. 20-yr 6% S. F. Gold Bonds, due November 1, 1942, at_____ 97½

19,000 CONSOLIDATED TEXTILE CORPN. 1st Mtge. S. F. Cong. Gold Bonds, due June 1, 1942, at_____ 99½

200 shs. CENTRAL TRUST COMPANY OF ILLINOIS Stock, at_____ 185

With two or three exceptions, the bonds received by the petitioner, were parts of small issues underwritten by the securities department of the Central Trust Co. of Illinois, and were not active market bonds but were sold for income and investment. They were not listed on any exchange, but quotations of bid and asked prices were published. Such quotations showed bids for most of the bonds in question and during the year 1923 offers for a total amount considerably in excess of the amounts received by the petitioner. The general manager of an investment bond house in Chicago gave as his opinion that certain amounts of the bonds in question could not be readily converted into cash or its equivalent substantially equal to the fair value of the property basing such opinion upon his belief that the printed quotations did not represent an actual market and upon the theory (apparently) that the entire block of bonds must be sold in one day. Although he admitted that his own firm in December, 1922, and January and February, 1923, had made some sales of all the bonds involved, he did not consider such sales material as indicating a market for the bonds in question.

It is our opinion that the petitioner has failed to show that the bonds, or any part of them, had no readily realizable market value. This is not such a case as we considered in *Burley Tobacco Co. of Frankfort*, 13 B. T. A. 892, where only a local market existed. In this proceeding there is abundant reason to believe that a much larger market existed based upon the character of the securities and the probable safety of principal and income.

*Judgment will be entered for the respondent.*